. (106 So. 569)

No. 25580.

### LEOPOLD DESK CO. v. SCHWAB.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

Sales ⊛87(3), 181(11) — Evidence held to show terms of contract and breach of same by plaintiff.

Evidence *held* to show that contract required payment by plaintiff for all lumber purchased on receipt of invoice and bill of lading less discount, and that defendant breached contract by failing to pay in time warranting rescission by seller.

Appeal from Twenty-First Judicial District Court, Parish of Pointe Coupee; William C. Carruth, Judge.

Action by the Leopold Desk Company against Nicholas Schwab. From a judgment of dismissal, plaintiff appeals. Affirmed.

J. H. Morrison, of New Roads, for appellant.

Bouanchaud & Kearney, of New Roads, for appellee.

ROGERS, J. This is a suit for damages for an alleged breach of contract to deliver lumber. Plaintiff is a corporation, of Burlington, Iowa, engaged in the manufacture and sale of furniture. Defendant is a sawmill operator in Pointe Coupee parish, this state. The contract is in the form of letters passing between the parties. Defendant denied that he violated the agreement. He averred that under the terms of the contract each shipment of lumber made by him was to be paid for by plaintiff in cash on receipt of the invoice and bill of lading less a discount of 2 per cent.; that defendant continually failed to pay promptly for the lumber notwithstanding repeated demands, and that, finally, he advised plaintiff by letter that he would not make any further shipments because of its failure to pay for the lumber in accordance with the agreement.

The court below rejected plaintiff's demand and dismissed its suit, and plaintiff has appealed from the judgment.

On February 23, 1919, defendant wrote plaintiff advising that he was prepared to sell certain classes of lumber, which he described, at $26 per thousand f. o. b. Schwab, La. Nothing was said in this letter relative to the terms of payment. On March 10, 1919, plaintiff wrote defendant inclosing an order

for 75,000 feet of lumber at a price of $26 per thousand f. o. b. Schwab. This order contained other conditions which it is unnecessary to mention, but nothing in regard to the terms of payment. Defendant admits that he received and accepted this order, but avers that it was understood and agreed that payment for the lumber was to be made in cash on receipt of the invoice less a 2 per cent. discount. On May 16, 1919, plaintiff addressed another letter to defendant, inclosing an additional order for 100,000 feet of lumber at the same price. Nothing was yet said in regard to the terms of payment. On May 21, 1919, defendant wrote plaintiff acknowledging receipt of this letter and order, and advised defendant that he would accept the order provided defendant would agree to take the backing boards, not to exceed 18,000 feet in the total of 175,000 feet of lumber ordered. Defendant, also, in this letter asked for a definite understanding as to the terms, suggesting as a satisfactory arrangement in that respect the payment of cash less 2 per cent. on receipt of each invoice and bill of lading. On May 23, 1919, plaintiff replied that it would be satisfactory to include the backing boards and that it would make its settlements in the manner suggested, taking advantage of the cash discount on defendant's invoices.

It seems to be clear from defendant's letter of May 21, 1919, and plaintiff's reply thereto dated May 23, 1919, that the parties definitely agreed that each shipment of lumber was to be paid for by the plaintiff on the receipt of the invoice and bill of lading less 2 per cent. discount. At the time of this correspondence no shipment had been made, and the agreement as to terms was undoubtedly intended to cover all of the lumber to be shipped, for, in referring to the backing boards, defendant assured plaintiff that "in the 175,000 feet there wont be more than 18,000 feet of this class of lumber."

Defendant made three shipments; the invoice for the first shipment reached plaintiff's office on July 7, 1919, the invoice for the second shipment reached plaintiff's office on July 9, 1919, and the invoice for the third shipment reached plaintiff's office on July 11, 1919. Notwithstanding the agreement as to terms, plaintiff waited until August 7, 1919, before making any remittance whatever, and then it made only a partial payment. On August 19, 1919, it made a second remittance, and on September 10, 1919, it made its last payment on account of the three shipments of lumber. In the meantime, under date of July 13, August 3, and August 15, 1919, defendant addressed letters to plaintiff insisting upon prompt settlement in accordance with the agreement. On August 19, 1919, plaintiff wrote defendant pretending that there was a misunderstanding in the matter and that it was merely following its usual custom of withholding a sufficient amount of the invoice price to take care of freight and shortages, and although plaintiff assured defendant it wanted to do what was right, it nevertheless retained an amount due to him until September 10, 1919. It also appears that plaintiff in making its remittances was careful to deduct the 2 per cent. discount of the invoice prices. Thus carrying out that part of the agreement which was to its advantage and ignoring that part of the agreement which was to its disadvantage. Defendant testified that under date of August 25, 1919, he wrote a letter notifying plaintiff he would not ship it any more lumber because of the failure on its part to comply with its agreement to make prompt payments. The officers of the plaintiff company deny having received any such letter. The fact remains, however, that plaintiff never demanded that defendant ship it any more lumber until January 20, 1920, when, through its attorneys at Burlington, it notified the defendant that he would be expected to comply with his contract. It is true that during the intervening period plaintiff had

addressed several letters and a telegram inquiring as to shipments, but it made no attempt to place defendant in default until January 20, 1920. The reason for plaintiff's action is obvious. There was only a slight advance in the price of lumber during the latter part of the year 1919, but in 1920 there was a rapid increase in lumber values ranging from $65 and $73 per thousand feet to $85 and $86 per thousand feet. Plaintiff could not have been in good faith when on January 20, 1920, it sought the services of its lawyers to threaten defendant with a suit for damages for his alleged noncompliance with his contract, because it is in evidence, placed in the record by plaintiff itself, by means of invoices attached to the deposition of Mr. Leopold, its president, beginning with the purchase under date of July 26, 1919, of 16,538 feet of lumber from the Morse Bros. Lumber Company, of Helen, Ga., and ending with the invoice dated January 19, 1919 (this was the day preceding the date of the letter of plaintiff's attorney) showing the purchase from the Mason-Donaldson Lumber Company, of Rhinelander, Wis., of 15,211 feet of lumber, that plaintiff purchased from various concerns throughout the country a total of 179,134 feet of lumber, although defendant's agreement was to furnish it with only 175,000 feet, of which amount defendant had actually supplied plaintiff, in the three shipments hereinbefore referred to, with 47,831 feet, leaving due plaintiff, according to its own contention, only 127,169 feet. Plaintiff has also charged up to defendant's account purchases of lumber made on January 22, February 22, February 24, March 3, March 4, June 11, and June 17, 1920, totaling 101,163 feet. The eighteen invoices which the president of the plaintiff company attached to his deposition as showing the purchases made to replace the 127,169 feet of lumber which it is alleged Schwab failed to furnish represent a total of 280,297 feet of lumber. In this connection, it is to be observed that in none of plaintiff's letters was the defendant advised that plaintiff was going out into the open market in order to make these purchases to replace the lumber which it now claims he had failed to furnish.

It is our conclusion, reached after a careful study of the record, that it was plaintiff, and not defendant, that breached the contract, and that plaintiff is therefore not entitled to recover any damages herein.

Judgment affirmed.